IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

HYBRID KINETIC AUTOMOTIVE
HOLDINGS, INC. and AMERICAN COMPASS, INC.                    PLAINTIFFS

VS.                                       CAUSE NO. 3:09CV00035-MPM-DAS

HYBRID KINETIC AUTOMOTIVE CORP.,
CHARLES WANG, JACK DENG, GARY TANG, and
NICOLE DENTON                                                  DEFENDANTS

HYBRID KINETIC AUTOMOTIVE
CORPORATION, ET AL.                                  THIRD-PARTY PLAINTIFFS

VS.

YUNG (BENJAMIN) YEUNG a/k/a
RONG YANG, ET AL.                                     THIRD-PARTY PLAINTIFFS

## ORDER

This matter is before the court on motion of Hybrid Kinetic Automotive Corp. to disqualify Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP, to compel the return of client files, and for leave to depose members of the Liner Firm (# 39); the plaintiff's motion for leave to file a sur-reply to Hybrid Kinetic Automotive Corp.'s motion to disqualify (# 88); and the plaintiff's motion for reconsideration of the court's June 2, 2009 oral ruling on Hybrid Kinetic Automotive Corp.'s motion to disqualify. The court heard oral argument from the parties on June 2, 2009,[1] and now having considered the submissions of the parties, the

---

[1] Prior to offering their argument on the instant motion, the defendants called Mr. Wang to offer testimony regarding the facts in this case. Following Mr. Wang's testimony on direct examination, the plaintiffs objected to the testimony on the ground that they had no notice that Mr. Wang's testimony would be offered as evidence during the hearing. The court is of the opinion that the plaintiffs failed to assert their objection in a timely manner and thus waived it.

record, and the applicable law, the court finds as follows:

## PROCEDURAL FACTS

On March 27, 2009, the plaintiffs, Hybrid Kinetic Automotive Holdings, Inc. ("HKAH") and American Compass, Inc. ("ACI"), filed the Verified Complaint for Equitable Relief and Damages (# 1) against the defendants, Hybrid Kinetic Automotive Corp. ("HKAC"), Xiaolin (Charles) Wang, Xi (Jack) Deng, Yi (Gary) Tang , and Capital Wealth Holdings, Ltd. ("CWH") along with others sued in their individual capacities. On April 24, 2009, HKAH and ACI filed motions (# 26 & # 27) for admission pro hac vice of Ellyn S. Garofalo and Randall J. Sunshine with the law firm of Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP ("Liner Firm"). The court granted those motions by Order (# 30) dated April 28, 2009. The instant motion to disqualify counsel was filed on May 1, 2009. The same day, the defendants filed their Verified Third-Party Complaint (# 42) against Yung (Benjamin) Yeung, HKAH, and ACI. The plaintiffs filed their First Amended Complaint For Equitable Relief and Damages (# 84) on May 27, 2009.

## BACKGROUND

The paramount issue in this case is the rightful ownership and control of HKAC and/or the hybrid car project. The Amended Complaint alleges that Charles Wang and other defendants staged a "coup" to seize control of HKAC and its assets. It further alleges that Mr. Wang was Director and legal counsel for HKAH and Compass Pacific Holdings, Ltd (the parent company of ACI) – "the entities which conceived, developed and funded the hybrid car project." According

---

However, the court notes that Mr. Wang's testimony was cumulative to the allegations made in the Third-Party Complaint and in his declaration. Any additional testimony was not relevant to the disqualification issue and not relied upon by the court.

2

to the Amended Complaint, "[t]he goal of the project was to construct a manufacturing plant in Tunica, Mississippi that would build hybrid cars and provide employment to thousands of Mississippi residents." The Amended Complaint further alleges that sometime in October 2008, Mr. Wang and the defendants "secretly arranged" to have the shares of HKAC issued to Mr. Wang's own company, CWH, rather than to HKAH, "the company established for the sole purpose of holding HKAC's shares." It is alleged that in or about March 2009, Mr. Wang secretly enlisted Chinese nationals, previously unrelated to the project, to replace the legitimate directors of HKAC.

The Verified Third-Party Complaint [Doc. 42] filed by Mr. Wang, HKAC, and others alleges that "HKAC is part of a joint-venture between Mr. Yeung and . . . [Wang] . . . that began in August 2007 for the purpose of the developing, designing, and marketing hybrid automobiles in the United States. . . ." In his declaration submitted in support of the instant motion, Mr. Wang states that in August 2008, he had conversations with Randall Sunshine and Josh Grode of the Liner Firm about the joint-venture and potential needs for legal advice. Mr. Wang further declares that he retained the Liner Firm in November 2008 to "provide corporate advice, assist in the negotiation of numerous technology agreements, and otherwise provide advice to HKAC and the joint venture." He further states that during a trip to Germany to negotiate technology contracts with vendors, he had several conversations with Mr. Grode regarding the structure of the joint-venture.

On the other side, in his declaration in support of the plaintiffs' response to the motion to disqualify, Josh Grode states that the scope of the Liner Firm's representation of HKAC did not relate to ownership or corporate structure of HKAC or a joint venture between Mr. Wang and

Mr. Yeung. Mr. Grode declares the only work the Liner Firm performed "involved negotiating vendor contracts in Germany." According to Mr. Grode, "[t]he object of the new representation was to negotiate contracts with vendors in Germany that would participate in the development of a hybrid car prototype. The representation involved traveling to Germany on short notice and was limited to negotiating the contracts with German suppliers." Mr. Grode further states that members of the Liner Firm also met with German companies that could assist with "the design and construction of the anticipated Mississippi manufacturing plant."[2]

Mr. Grode also states that when the Liner Firm was engaged, he "understood that HK Corporation was intended as a wholly owned subsidiary of HK Holdings, a company organized by existing firm client Yung (Benjamin) Yeung . . . solely for that purpose." According to Mr. Grode, he understood that HKAC was owned and controlled by Mr. Yeung. Mr. Grode submits the Liner Firm's retainer agreement with HKAC, dated November 21, 2008. The retainer agreement provides "the terms under which the client would engage the Firm in connection with general corporate matters including a joint venture, (the "Project")." The retainer agreement was signed by Mr. Wang on behalf of HKAC. Additionally, with regard to termination, the retainer agreement provides that prior to terminating the client's engagement of the firm, the firm would give "not less than 15 days' prior notice."

According to Mr. Grode, after he returned from Germany on November 30, 2008, the

---

[2]Attached as an exhibit to the Third-Party Complaint is a letter to Governor Haley Barbour dated March 23, 2009, from Peter Kreuter, President and CEO of Defendant Motoren- und Engine-Tecknik GmbH ("Meta") which purports to confirm that a technology contract had been entered into between Meta and HKAC, "a Mississippi company." In that letter, Mr. Kreuter referred to Mr. Wang as the President and CEO of HKAC and indicated that Meta had been working with two other companies to build demonstrator cars using Meta's engine technology designed for HKAC.

4

Liner firm did not perform any additional work for or on behalf of HKAC. In email correspondence dated April 17, 2009, Mr. Wang advised Mr. Grode and Mr. Sunshine that HKAC was "moving forward" with the hybrid car project in Mississippi and that Mr. Yeung was "no longer involved in the project" and inquired whether the Liner Firm would "continue its representation of HKAC." The same day, Mr. Grode responded in an email that the Liner Firm had been "recently advised" of Mr. Wang's termination from HKAC and that they were declining his offer to continue to represent HKAC. Mr. Grode also told Mr. Wang that the Liner Firm would no longer represent him with regard to personal tax matters. When Mr. Wang requested that both his personal files and files related to HKAC be returned to him, Mr. Grode responded that Mr. Wang's personal files would be returned immediately but that HKAC files would not because the Liner Firm did not believe it had a legal right or obligation to do so.

## DISCUSSION

With the present motion, the movant's argue for disqualification, making essentially three arguments: First, they argue the Liner Firm should be disqualified because the firm represented HKAC at the same time it represented interests adverse to those of HKAC in direct violation of Rule 1.7 of the Mississippi Rules of Professional Conduct. Next, the movant's argue the Liner Firm should be disqualified because should the present action go to trial, members of the firm will be witnesses at trial. Finally, the movant's argue the Liner Firm's previous representation of HKAC violates Rule 1.9 of the Mississippi Rules of Professional Conduct because that representation is substantially related to the present litigation. Because the court finds the Liner Firm's previous representation is substantially related to the present action, the court finds the firm is acting in direct violation of Rule 1.9 and must be disqualified. Consequently, the court

will address the additional arguments made by the movants only briefly.

## Rule 1.7

HKAC's first argument implicates Rule 1.7 of the Mississippi Rules of Professional Conduct. Rule 1.7 provides in pertinent part:

> A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
>
> (1) the representation will not adversely affect the relationship with the other client; and
> (2) each client has given knowing and informed consent after consultation. . . .

HKAC contends, *inter alia*, that an attorney-client relationship existed between the Liner Firm, HKAC, and Charles Wang at the time the Liner Firm entered its appearance on behalf of the plaintiffs against HKAC and Wang. The engagement letter between the Liner Firm and HKAC provides: "Prior to terminating your engagement of our Firm, we shall give you not less than 15 days prior notice." Mr. Grode sent Mr. Wang a notice of termination on April 17, 2009. Then, on April 24, 2009, Ms. Garofalo and Mr. Sunshine filed motions for admission of counsel pro hac vice on behalf of HKAH and ACI, and those motions were granted on April 28, 2009. Therefore, as the court noted at the hearing, while it involves a technical reading of the engagement letter, the evidence shows that HKAC was still a client of the Liner Firm when its attorneys appeared in this case on behalf of the plaintiffs. Consequently, at the time the Liner Firm made its appearance, it did so in violation of Rule 1.7. Nevertheless, because the Liner firm has since terminated its representation of both Mr. Wang and HKAC, it is Rule 1.9 that now governs whether the Liner Firm should be disqualified. *See* Miss. Rules of Prof'l Conduct R.1.7 cmt. (2008) (Where more than one client is involved and the lawyer withdraws because a conflict

arises after representation, whether the lawyer may continue to represent any of the clients is determined by Rule 1.9.). Accordingly, the court finds the issue moot as to Rule 1.7.

## Witnesses at Trial

As to the movant's argument that the Liner Firm should be disqualified because members of the firm will likely be witnesses at trial, the court finds that argument is better seen as support for the more substantive argument that the previous representation is substantially related to the present litigation. Accordingly, the court turns to Rule 1.9.

## Rule 1.9

The court finds the Liner Firm's representation of Hybrid Kinetic Automotive Holdings, Inc. And American Compass, Inc. is in direct violation of Rule 1.9 of the Mississippi Rules of Professional Conduct. Rule 1.9 provides in pertinent part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> > (a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation;

In this circuit, a party seeking to disqualify opposing counsel under Rule 1.9 "must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations." *See In re American Airlines*, *Inc.*, 972 F.2d 605,614 (5th Cir. 1992). If both elements are established, then an irrebuttable presumption arises that the attorney obtained confidential information while employed by the firm that represented the party

moving for disqualification. *Id.* "A second irrebuttable presumption is that confidences obtained by an individual lawyer will be shared with the other members of his firm." *Id*. at 614 n.1 (citing *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981)).

Regarding the first element of the *American Airlines* test, it has already been established that there was a former attorney-client relationship between the Liner firm and HKAC.[3] The retainer agreement specifically provides it was prepared to set forth the terms under which the Client would engage the Firm in connection with "general corporate matters including a joint venture (the "Project")." And, the retainer agreement is signed on behalf of HKAC by Charles Wang, a director of the company.

Next, the court must determine whether there was a substantial relationship between the Liner Firm's prior representation of HKAC and its current representation of the plaintiffs and the

---

[3]The plaintiffs argue there was no attorney-client relationship between the Liner Firm and the defendant, HKAC. Relying on the Second Circuit's decision in *Allegaert v. Perot*, 565 F.2d 246 (2nd Cir. 1977), the plaintiffs contend that there was never an attorney-client relationship because defendant, HKAC, is an "imposter" and that the present "ownership" of HKAC is the result of "outright theft" of the corporation's stock by Mr. Wang. Ultimately, the plaintiffs contend there is no conflict when the corporate client, not the attorney, switches sides.

*Allegaert* has been found to be particularly applicable to cases where the current and former clients were once working closely together, such as when a partnership or joint venture dissolves. *Keoseian v. Von Kaulbach*, 707 F.Supp. 150, 153 (S.D. N.Y. 1989). However, courts that have adopted the Model Rules of Professional Conduct (including the Fifth Circuit) have rejected *Allegaert* and its line of cases because it established precedent only under Canon 4 of the ABA Code of Professional Responsibility. *Prisco v. Westgate Entertainment, Inc*., 799 F.Supp. 266, 271 (D. Conn. 1992). Those courts concluded that *Allegaert* only considered the attorney's duty to preserve confidential information , whereas Model Rule 1.9(a) offers much broader protection, extending to the attorney's duty of loyalty to his client. *See, e.g., Koch v. Koch Indus*., 798 F.Supp. 1525, 1535 (D. Kan. 1992); *see also*, *American Airlines,* 972 F.2d at 619 ( " The substantial relationship test is concerned with both a lawyer's duty of confidentiality *and* his duty of loyalty. . . .).

third-party defendants in this litigation.[4]

Regarding application of the substantial relationship test, the Fifth Circuit's decision in *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981) is instructive:

> The advice does not need to be "relevant" in the evidentiary sense to be "substantially related." It need only be akin to the present action in a way reasonable persons would understand as important to the issues involved . . . Where parts of the present action and the past representation concern the very same subject matter, reasonable minds must agree they are substantially related.

As such, the Fifth Circuit's application of the substantial relationship test requires the court to analyze the scope of the prior and present representations. This involves reviewing the pleadings, attorney billing statements, discovery requests and responses and other filings and identifying the parties, claims, allegations, and defenses involved in the former representation and the present litigation. *See In re American Airlines,* 972 F.2d at 628. If the two contain the same subject matter, and that subject matter is "important" to the issues in the present representation, there is a substantial relationship, and disqualification is required.

To determine if the previous representation is substantially related to the present litigation, the court looks first to the events surrounding the Liner Firm's trip to Germany on behalf of HKAC. In his declaration, Mr. Grode states that the object of the former representation of HKAC was to negotiate contracts with the German vendors who would participate in the

---

[4]The plaintiffs also make the argument that the substantial relationship test does not apply in this case because there is no reasonable basis to conclude that the Liner Firm obtained confidential information from Messrs. Wang and Tang (both officers of HKAC) to which Mr. Yeung (chairman and founder of HKAC) and HKAH were not entitled. Again, the plaintiffs rely primarily on the Second Circuit's reasoning in *Allegaert* which has been rejected by the Fifth Circuit. *See American Airlines,* 972 F.2d at 614.

development of a hybrid car prototype. The Liner Firm argues this was the *only* aspect of their representation. However, as the court noted at the hearing, it strains credulity to think contract negotiations related to a project of this magnitude can be "walled off" from the other issues now before the court; namely, the structure and ownership of HKAC. Indeed, a December 4, 2008 email from Mr. Grode to Mr. Tang makes it evident that there had been some discussion regarding the corporate structure and ownership of HKAC as it relates to the hybrid car project: "We also need to start the corporate work. I don't want the delay to create adverse tax consequences when shares are issued!" Clearly, some discussion concerning "corporate work" had begun. Additionally, in his declaration, Mr. Wang states he had "several conversations with Mr. Grode regarding the structure of the Venture." He further states that " Mr. Grode was also present for conversations regarding Mr. Yeung's commitment to provide capital to HKAC."

Moreover, the contracts or memoranda of understanding drafted by the Liner Firm while in Germany are now themselves an issue in the present litigation. As part of its argument, the Liner Firm contends it previously represented an HKAC owned and controlled by HK Holdings and Mr. Yeung, not the alleged imposter purportedly owned and controlled by Mr. Wang and his associates. During oral argument, plaintiff's counsel argued they could not return the HKAC file to this alleged newly-formed HKAC because the file did not belong to the new entity. The Liner Firm contends that HKAC has been stolen by Mr. Wang and his associates. Mr. Wang and the other defendants argue the file belongs to them. Plaintiff's counsel informed the court at oral argument that the file contains the German vendors' memoranda of understanding drafted during the trip to Germany.

Such an argument makes clear to the court that advice given by the Liner Firm to HKAC

10

concerning the vendor contracts is clearly relevant to which company owns the hybrid car project. In other words, because ownership of a case file filled with documents drafted by the Liner Firm is a fundamental issue in the present litigation, it is clear the previous representation is substantially related to the present litigation. Indeed, during oral argument, plaintiff's counsel acknowledged that the Liner Firm's decision to withhold the file regarding the former representation "goes to the very heart" of *this* lawsuit.

Next, the Third-Party Complaint alleges that Mr. Yeung, the owner of HKAH, has tortiously interfered with the technology contracts that HKAC obtained through the services of the Liner Firm. Specifically, the Third-Party Complaint alleges that the "joint venture" includes a distinctively different business model from others in the automotive industry as it is based on partnerships with technology providers in Europe and Asia. It further alleges these technology contracts are critical to the success of HKAC. According to the Third-Party Complaint, Mr. Yeung has made efforts to undermine and sabotage HKAC's relationship with the technology partners who signed MOU's that were negotiated by the Liner firm. In this case, the Liner Firm represents Mr. Yeung, a defendant to the Third-Party Complaint. Therefore, because the Liner Firm previously represented HKAC with regard to negotiation of MOU's underlying the technology contracts which are at issue in this litigation, the court finds the prior and current representations are substantially related.

In addition to the corporate structure of HKAC, a separate issue paramount in this litigation will be to determine the precise nature of the business relationship between Messrs. Yeung and Wang as it relates to the hybrid car project. Specifically, it must be determined whether the hybrid car project was a joint venture between Yeung and Wang. In his declaration,

11

Mr. Grode essentially asserts that during the former representation of HKAC it was his "understanding" that the company was intended as a wholly owned subsidiary of HKAH (owned and controlled by Mr. Yeung) and that there was no joint venture between Yeung and Wang. In other words, Mr. Grode has at least some information that he believes supports a position contrary to that of his former client. It therefore appears possible – if not likely – that Mr. Grode will be called as a witness in the present litigation. This is yet another instance in which the Liner Firm's prior representation is entangled in the present one. As the court stated in *Corrugated* and looking to the matter as a whole, it is plainly evident that the former representation is "akin to the present action in a way reasonable persons would understand as important to the issues involved." *Corrugated,* 659 F.2d at 1346. To find otherwise would not only create an egregious appearance of impropriety, but would lead undoubtedly to professional attacks, bar complaints, refusals to cooperate, etc. further delaying the progress of the present litigation.

### **Additional Arguments in Response to Motion**

In addition to their responses to the specific arguments set out by the movant's in their motion to disqualify, the respondents also argued they should not be disqualified because: (1) HKAC is only a nominal defendant; and (2) the Liner Firm did not represent Wang or Tang. The court will now address these arguments.

### **Nominal Defendant**

In their response the plaintiffs argue the motion to disqualify should be denied because HKAC "is nothing more than a nominal defendant, necessary to implement the relief sought by plaintiffs; to wit, either the return of its stock to HK Holdings or a restraint against any further

interference with the hybrid car project it has attempted to hijack." In support of this argument, the plaintiffs cite *Guzewicz v. Eberle*, 953 F. Supp. 108 (E.D. Pa. 1997). *Guzewicz* was a case in which minority shareholders sued majority shareholders for alleged violations of securities laws. The plaintiffs were represented by the attorney who formerly represented the corporate defendant. The court did not disqualify counsel, finding that realistically these claims had been brought on behalf of, and not against, the respective corporations. *Guzewicz*, 953 F. Supp. at 110. While the court agrees with the reasoning set out in *Guzewicz*, the court finds it does not apply to the instant action. The plaintiffs in the present case sued HKAC along with others, alleging theft of the corporation itself. As the movant's point out, the plaintiffs in *Guzewicz* were shareholders, alleging they had not received proper notice under applicable securities law. *Id.* The *Guzewicz* plaintiffs did not sue to obtain control of the corporation. Had they filed such a suit as the plaintiffs did in the present case, the corporation would not have been a nominal defendant.

Moreover, as the defendants point out, HKAC has now become a Third-Party Plaintiff, alleging, among other things:

> Mr. Yeung and other Third Party Defendants contacted Meta and misrepresented that HKAC's internet server was down and that HKAC lost copies of all its contracts. Therefore, Mr. Yeung, through his subordinates, asked that Kreuter "re-execute" the contract between Meta and HKAC. However, the contract actually provided by Third-Party Defendants was not with HKAC. Rather, the proposed contract was for Mr. Yeung's competing project on behalf of HK Holdings. This fraudulent contract was created to look almost identical to the original contract executed with HKAC in an effort to deceive Meta into signing a new contract with HK Holdings. This contract is clear evidence that Mr. Yeung was working against and maliciously trying to defraud HKAC to steal the Prototype.

With their Third Party Complaint, it is clear that the interests of HKAC and the plaintiffs

are in direct conflict with one another, and HKAC's actions have certainly forced the issue. As such, HKAC is not a nominal party to the present action.

### The Liner Firm Did Not Represent Wang or Tang

The plaintiffs also respond that the motion to disqualify should be denied because it did not represent Wang or Tang. The movant's reply that such a response is disingenuous, but after examining the argument, it is clear the Liner Firm is responding only that it did not represent Wang or Tang personally with respect to the Hybrid Car Project. The court agrees. Though it has been established that there was an attorney-client relationship between the Liner firm and Wang personally, Rule 1.9 does not apply to the relationship because the defendants have failed to show that the Liner Firm's representation of Mr. Wang on a personal tax matter is in any way related to this litigation. Nevertheless, the court does not find this argument determinative because the present motion was filed on behalf of HKAC.

### MOTION TO FILE SUR-REPLY

At the conclusion of oral argument, counsel for the plaintiffs requested a ruling on the plaintiffs' motion to file a sur-reply. However, counsel for the plaintiffs acknowledged that the matters addressed in the proposed sur-reply had been presented during oral argument. Accordingly, the court orally granted the motion for leave to file the sur-reply and hereby deems the same filed *nunc pro tunc* as of May 29, 2009 and a part of this record. Because the court considered the arguments made in the plaintiffs' sur-reply, the plaintiffs have not been prejudiced by the defendants' new argument asserted for the first time in their reply brief. Accordingly, the plaintiffs' motion to strike the new arguments made in the defendants' reply brief is denied.

## MOTION FOR RECONSIDERATION

On June 12, 2009, the plaintiffs filed a motion for this court to reconsider its ruling from the bench granting the defendants' motion to disqualify the Liner Firm. The court, having fully considered the arguments made therein and the supporting Declaration of Mr. Grode, finds for the reasons stated above that there is no reason to disturb the court's ruling. Accordingly, the motion for reconsideration should be denied.

**IT IS, THEREFORE, ORDERED:**

1. That the defendants' Motion to disqualify the Liner Firm is hereby **GRANTED**, and the Liner Firm and its attorneys are hereby dismissed from this lawsuit as counsel for the plaintiffs and third-party defendants and shall terminate all association and communication with said parties as it relates to this litigation.

2. **IT IS FURTHER ORDERED** that the defendant's motion to compel is hereby **GRANTED**. The Liner Firm is hereby ordered to produce the client files of HKAC within seven (7) days of entry of this order.

3. **IT IS FURTHER ORDERED** that the defendants' motion for leave to depose the Liner Firm is hereby **GRANTED**.

4. **IT IS FURTHER ORDERED** that the plaintiff's motion for leave to file a sur-reply is hereby **GRANTED**.

5. **IT IS FURTHER ORDERED** that the plaintiffs' motion for reconsideration is hereby **DENIED.**

**SO ORDERED**, this the 18th day of June 2009.

/s/ David A. Sanders  
UNITED STATES MAGISTRATE JUDGE